Good morning, Your Honors. My name is Matthew Kaplan, and I represent Dianne Butts, the appellant, who is a retired Lieutenant Colonel from the U.S. Army and is here with us today in the audience. Your Honors, the Uniformed Service Employment and Reemployment Rights Act, which is central to this case, requires that a person returning from military service be placed in an appropriate reemployment position. The issue in this case is what the definition of that reemployment position is. Normally, the returning individual is entitled to the escalator position, the position that they would have been in if they had not gone away to military service. If that's not possible, they're entitled to the same position that they had before. However, under 38 U.S.C. 4313, A3 and A4, if, for whatever reason, the person who is returning is not qualified to do either the escalator position or the position they had before, the employer is required to exercise reasonable efforts to put the employee, to qualify the employee for the nearest approximation of the job that the employer can't do. It needs to find... Wait. We've been very clear that different provisions govern reemployment and conditions of employment, the different provisions of the statute. Here, Prince William County School Board initially reemployed her as a fifth-grade teacher and, in fact, credited her, issued her retroactive contract, paid her a retroactive salary with a lump sum. So that, the reemployment is not an issue. Well, I would disagree with you, Your Honor. Our argument is that the law requires that she be reemployed in an appropriate position. The issue is, the moment that she's reemployed in a proper reemployment position, the protections of 4312 and 4313 disappear. But the issue is, our contention is that she was never put in a position for which she was qualified. Did she hold herself out as qualified? I'm not understanding, because she was, is she saying, is her argument now that she shouldn't have been reemployed in the position that she left? She was not qualified to be reemployed in the position that she left. That's the position that she left in, in which she had previously received positive evaluations, and it's also the position she applied for, correct? Yes. Yes, yes, it was a position that she applied for. And, you know, it may well be true that she thought she could do that job. But, in fact, because of whatever happened during the time she was away in military service, it was imminently clear to the school system that she could not do the job. In fact, she was hired. Not, I mean, the school system, it seems to me rather paradoxically that you're criticizing the school system for making repeated efforts to accommodate her in the position to which they reemployed her when she came back, as they were required to do. They made multiple efforts to assist her, creating additional training opportunities, scheduling administrative meetings, providing her with teacher mentoring, giving her time off to sit in on other classes. They made, as the statute, as you would think an employer should do, every conceivable effort to accommodate her for the position to which she had left, in which she wanted to come back to. And so you're saying that they handicapped her by attempting to reaccommodate her, accommodate her? I think there comes or there came a point in this case where it's clear. I mean, certainly it was appropriate to try to qualify or requalify her for the fourth or fifth grade elementary school position. But certainly over the year and a half or whatever time period we're talking, that's the approximate time period we're talking about here, it became clear that she simply was not capable of being a teacher. Right. But that was after the reemployment. So can you point to any case law that permits a challenge under 4313 for conduct occurring after reemployment? I don't think there is any case that is either way directly on point. Yeah, there is in this circuit. The reemployment, they are distinct. There is precedent. You're referring to the Francis case, Your Honor? Yes. I think that's different. I think it's clear from Francis that once the employee is placed in the reemployment position, the protections of 4313 disappear. But until the person is put in the correct position, that those protections don't disappear. For example, if someone were to come back from military service and... Are you saying she wasn't qualified for the position that she applied for and that she was reemployed at initially? Yes, Your Honor. Okay. In your complaint at paragraph 133JA53, it says, for her part, Ms. Butts maintains that she was qualified to teach fifth grade during the 2009-2010 school year. So how do you square that? I think that language is in the complaint. I think if you look at the whole complaint in context, I think the complaint is essentially making the same argument we're making here. No, it's challenging. It's under 4313. And it talks about the fact that Ms. Butts gave the school system advance written notice of her service. She submitted an application for reemployment. And it's fairly clear that she is arguing that she was qualified to teach fifth grade during the 2009-2010 school year. What I would say to that, Your Honor, is I think this was the argument that was used on the summary judgment motion in the court below. You're disclaiming your complaint? I don't think the argument here is inconsistent with the complaint. But I also don't think it's terribly unusual that the actual argument that comes out during the proceeding is not entirely consistent with the complaint. Did you ever amend your complaint? The complaint that Your Honor is referring to, the third amended complaint, is the most recent complaint. But it was amended three times. But that is the operative. You're correct, Your Honor. That is the operative language in the complaint. But obviously the federal rules allow a liberal amendment even after a trial is over if it's appropriate. I would highlight 20 CFR 1002.25, which I think supports our argument. Could I just, I'm sorry, before your time runs out, if you could get to that, get to my question after you cite that. I just want to get it in under the wire. If you could just clarify what relief you're seeking. We're seeking, we think that the trial court erred in denying the motion for summary judgment. It should be remanded for further proceedings. What relief are you seeking? What does she? Oh, I'm sorry, the relief in general. She believes she is entitled to, her theory is that, our theory is that the conduct of the school system worsened her condition, making it essentially impossible to work beyond the date that she actually worked. Okay. The reason, the accommodation efforts worsened her condition. Right. Well, the continued effort, the improvement plans and all of this to try to force her to do something which she wasn't capable of doing, worsened her condition. And if it was not for that conduct by the school board, she would have been able to work longer, and she's entitled to those damages. I thought she was on medical leave until she acknowledges that she was unable to work. There's no doubt that she was unable to work. Our contention is her inability to work was caused by the conduct of the school system. I'm sorry. And she wasn't on medical leave at that point? I thought she was on medical leave to the point. They made a genuine effort to work with her to get her to the point that she could perform her position, and the district court said what you're arguing is the next step. And the district court said at the next step, the medical report shows that she was unable to work. That's right. At the point where she left, she was unable to work. But our contention is the reason she was unable to work was because of the conduct of the school system. And, therefore, she is entitled to damages because her inability to work was caused by the school system. Mr. Cavanaugh, I understand your position. You're saying that the day she, the day your client applied for reemployment, she actually was unable to do her job because of her related military service. That's exactly right, Your Honor. And, therefore, how would they have known that? Well, in this case, one of the reasons they would have known that is before they gave her the reemployment position, and this has been a person who had been an excellent teacher before she went into the military, before they gave her the reemployment position, she was a substitute teacher for, I think, three or four days. And the school system was so dissatisfied after those three or four days, they essentially fired her. So there was reason to know in this specific case. But I think also the statute and so on. But they fired her before they hired her. That's exactly correct, Your Honor. I think the only reasonable reading of the statute, and especially the CFR, is that there will be cases where it's not clear what the reemployment position is, and you have to put the person in that position, see if they're capable of doing it, try to get them up to a level where they can do the position. And if they can't, well, then that's not the reemployment position. You've got to find a position where they can do the work. But how is that not what happened here? They just consistently worked with her to try to get her to the point that she could perform the position satisfactorily. But what they did not do is there was obviously a point, and in our view because of this substitute teacher experience, it should have been even before she started, but there was a point where it was clear that she could not do this job. And I think the statute... So wouldn't she have been in violation of USERRA if they hadn't hired her in her previous position after she was discharged from the service? It seems to me that would have been a clear violation. Not if she was not qualified to do the job, they wouldn't have been in violation. But how would they know that? Well, I'm sorry, I'm going on. That's okay. And I think my time is expiring here. Just a question, Mr. Kaplan. What is your understanding of the law if, for example, your client had presented herself for re-employment because she's back to the United States, a civilian position, that I'm here to be re-employed, which I otherwise would seek, but I'm unable to do it as a result of my military service? What is your understanding would have been the school system's obligation at that point if she had said up front, I would like to be re-employed, but I can't, and it's related to military service. What was their responsibility? I think their responsibility was they would need to find some position. They would need to attempt to find some position that she could do, notwithstanding the disability. Well, it's obvious that it's not a teacher. Well, it may well not be a teacher. I think that's quite clear. She could not. Well, what could she do? For a school system that she is professionally a teacher and they teach children. I think there's a variety of positions in a school system, a secretary, even talking about extremes even. So you mean to tell me that would have been better to go immediately to a secretary than to try to rehabilitate her, not being told what the reason for her difference in behavior from being a good teacher to now. That's better than trying to work with her as they did to try to see, in fact, that she could do something and still be a teacher? There's nothing wrong with what they did initially, trying to see if they could get her to qualify to be a teacher. We don't have any complaint with that. The complaint is that this continued on and on when it was clear that that would not work. But they shouldn't have pressured her further. They should have known that, hands off, we need to do something else, that kind of thing you're saying? Do you have any medical evidence that that worsened her position? We have testimony, her testimony and her testimony about this. I don't believe there's any. You didn't put in any expert testimony, any medical testimony? It was rebuttal expert testimony, but not on the case in chief. No, I'm sorry. Thank you so much, Mr. Kaplan. Ms. McGowan? Good morning. Good morning. Mary McGowan here on behalf of the Prince William County School Board. I'm pleased to be here. Your Honors have quickly latched on to the fact that the issue on appeal was not raised below, that this is a different scenario, a different argument that we have here in the Fourth Circuit than we had in the district court. As Judge Duncan pointed out, in the district court, the position was that Ms. Butts was qualified to teach fifth grade, that she wanted to teach fifth grade, and the allegations in the Third Amendment complaint were that the reassignment to a fourth grade position violated Ms. Butts' USERRA rights because she was not qualified to teach fourth, as indicated by her performance problems over the 2009-10 school year. Significantly, at paragraph 133 of the Third Amendment complaint, the claim for discrimination under USERRA pursuant to 4311 was abandoned. And I think that's the obvious reason why we're hearing this new argument on appeal, which is essentially that the plaintiff was disabled by virtue of a disability from the outset of her reemployment and was not able to teach at all. That is speculative and it is conclusory. It is not supported by the nondisputed material facts in the record. There was no evidence in the record that at the instant of reemployment, as the court calls it in the Francis case. What about the period of substitute teaching that opposing counsel referenced? That period of substitute teaching was done before the school board recognized that she was applying to return under USERRA. It was a four-day period, and I think what the record fairly could be characterized to say is not that she was unable to perform the functions of that position, but that she refused to, that she was willful, that she was non-collaborative, that she took off for leave without obeying the rules, that I believe unwillingness to perform in standards is different from whether or not you're qualified, i.e., you have the capability of performing. But that behavior was in stark contrast to what had been her performance prior to going into military service, wasn't it? Not totally. There had been one evaluation, Your Honor, in which she had received a non-satisfactory in terms of maintaining an appropriate psychological environment, which I believe went to classroom management and interactions with students, which resurfaced again after she returned. Well, I can't give any expert testimony, but fourth grade is a tough grade, isn't it? Yes, it is, Your Honor. I believe it is a tough grade. So fifth grade and sixth grade are a little tougher, I think. You think so? We get towards middle school, I think you see more behavioral issues. Certainly the teachers at Montclair, the principals at Montclair, expected that a teacher with a master's in education, eight years of experience teaching fifth grade, was going to be able to teach fourth graders, that she was qualified when she came to that position. Clearly she was qualified, as Judge Duncan pointed out, for the escalator position that she was placed in in April of 2009. There was no evidence in this record, critical to this argument on appeal, there was no evidence in this record that at the time, the incident of reemployment, when the decision was being made how to reapply her under USERRA, that Ms. Buss suffered from any disability. The only evidence of an alleged disability, to say nothing of a service-related disability, was 18 months later in October of 2010, when she brought a note to her principal that said she was suffering from anxiety and stress that had gone undetected since 2008. Giving the plaintiff the benefit of the doubt for purposes of summary judgment, even assuming that that put the division on notice at that point, that she had a service-related disability, at the same time she was unable to work further. So that, as Judge Brinkman pointed out, any duty to reemploy in an alternative position, if it existed, was futile at that point. There was no evidence that when she came back to the division, that the defendant knew there was any type of disability, or should have known there was a disability. I think it's totally speculative, Judge Gregory, to expect a jury to conclude that from her actions over the period of four days at one substitute position, that lay people could conclude she suffered from post-traumatic stress disorder related to her military service. In contrast, when she came to the division under USERRA, she was asking for a fifth-grade position, she accepted the benefits. In the district court, there was no rebuttal to her argument that the doctrine of quasi-estoppel prevented her from taking an inconsistent position later on, in which she said she wasn't qualified to be a teacher. I was wondering, an appellant indicates that she lost wages, and I was wondering what those would be. Or I think that that is the claim. Could you tell me what those would be? I believe she has no damages. She had no standing because she had no remedy. Adjunctive relief was futile, because at that point she's been totally disabled to work since October 28th. Lost wages, she was compensated all the way until May of 2011. And that was what I was getting at, that period on medical leave? Yes. She received paid medical leave until May of 2011. She was terminated on June 15th. But as of October 28th of the previous year, 2010, she was unable to work. And so her ability to recover lost wages tied to her inability to work would be predicated solely, as was argued by counsel, predicated solely upon her contention that the school division aggravated her However, she has no 4311 hostile work environment vehicle by which to recover those damages. You've answered my question. Thank you. I wanted to stress also, Your Honor, that 4312 and 4313 only require an alternate placement where the employee is not qualified for the escalator position. And here I think the record was clear that she was qualified to teach fifth grade at the very least, if not to teach any grade between three and six. And alternative placement is only required where the employee is not qualified for the escalator position and after it has made reasonable efforts to qualify that person for the escalator position. But the issue here is really not qualification. It's like saying somebody comes back from the war and they're a paraplegic. What position are you qualified for? Well, you may be qualified to do several things. But the question is, under the circumstances, can you do it? You knew she had been deployed to the Middle East, right? Correct. And then you knew that there was some difference in terms of her performance, some, and rather non-corporate. Did you ever offer counseling to her early on? Did the school ever offer her any counseling? She was offered many opportunities at Montclair, which would have included the employee assistance program. She had a mentor. She had three administrators. Yes, you did offer counseling. Well, there was counseling, not psychological counseling. I don't know whether she took advantage of the psychological counseling that was available through the school division. But certainly the record is rife with the fact that she was getting psychological counseling on her own through the VA. But that was not known, of course, to the division, because they knew nothing about her medical condition, nothing about her military history, other than the fact that she had come back from overseas and served in Kuwait. But the school certainly would know. It's rather widely known that there are growing cases of post-stress problems with our vets returning from active service in the Persian Gulf. You'd think a school system would know, since you're in the business of education, would know about what's in the news and what's prevalent. But I think it's still a leap, Judge Gregory, to say that they should have been able to conclude that she suffered from post-traumatic stress disorder related to her military service. In fact, that's why the courts have said we need expert witnesses to even testify to that issue, because they're multifactorial type of diagnoses, and they can be contributed to by many factors. But Congress meant to protect our veterans. That was the whole purpose, to get this kind of special protection, because they've done a special thing. As we know, many of them give the last measure of devotion in that service. Many serve afterwards and still have lingering effects from that that keep us safe here. My question is, is there, in the spirit of the statute, a sense that when you have someone who, there's that you kept pushing her into a peg or a place where she couldn't go. And he says nothing that documents that you offered counseling to her or suggested it? Well, Your Honor, let me say this. That the record of her performance really is overwhelmingly a record of noncompliance, unwillingness to accept resources, refusal to follow lesson plans. There are statements in the record that she was not going to follow these directions, because she considered herself a tenured teacher, because it was basically below her to have to go and watch another teacher, observe another teacher's classroom. So that's a different story, I think, than someone who's exhibiting bizarre behaviors that might arguably be psychiatric behaviors, if you will, that arguably a layperson might say, we need to send you out for a fitness for duty situation. In the spirit of USERA, I think this is a case that illustrates the division went beyond what it had to do, in terms of the spirit of USERA. It didn't even start working until April. It paid her something like $66,000. It gave her benefits it didn't award to other employees under the circumstances. And then when the principal decided after her first year of teaching, 9-10, at Montclair Elementary School, that she wasn't meeting performance standards and recommended her dismissal, the administration counteracted that and gave her another contract for the following year to give her another chance in light of her extended military service. So I think we did meet the spirit of the statute. I wanted to point out the regulation that states that you're not required to reemploy a returning veteran if after reasonable efforts by the employer, the employee cannot be made qualified. And I believe that the record here clearly shows not just that she was correctly reemployed, but that even assuming that she was unqualified for it, we made reasonable efforts to qualify her for the escalator position, up until the point where she decided she couldn't come to work anymore. And as I said earlier, at that point it was futile. I wanted to address in the time I have, Your Honors, the Huff v. Winston case, which just came down in September from the Virginia Supreme Court. One of the many cases that come up when you shepherdize the Francis case, both in the federal courts and the state courts, dealing with the precedent that Daniels, or that, I don't want to keep wanting to say, it is Daniels. Right. That that particular case has, throughout the Francis case, I'm sorry. I think that Huff v. Winston bears directly on the efforts in this case of the plaintiff to bootstrap the challenge to her subsequent reassignment and her termination into the reemployment provisions of USERRA. And to avoid the burden of proof required to show that her reassignment and her termination were motivated by military animus, if you will, discriminatory intent based upon her military status. In this new case, which very closely follows the Fourth Circuit's precedent, Huff also had a service-related disability which was not diagnosed until well after she had been reemployed. And she also argued that 4312 and 4313 imposed a continuing duty upon an employer to accommodate her, since she had a service-related disability, by providing her with either additional training or alternative positions. That position, like here, there was no evidence that the employer in Huff knew at the moment of reemployability that there was a disability, nor could there have been, because Huff didn't have her heart attack until months, months later. So, again, that court, relying on Francis, noted that the close relationship between the reemployment provisions of 3012 and the right to a specific position under 4313 supports the conclusion that the provisions of the reemployability provisions do not apply beyond the date of reemployment. In other words, the duty to make reasonable efforts, like the other provisions of 4313, only apply to the structuring of the appropriate reemployment position, which is selected during the decision to reemploy. And because a claim under 1413 challenges the initial structure of that reemployment position, nothing that occurs subsequent to that is actionable under those provisions. Here, it's undisputed that Butts qualified at the time for and accepted the fifth-grade position. So her subsequent performance issues, her reassignment, her performance at Montclair, and her termination are not redressable in this case, simply because she did not, at least not under the reemployment provisions, she did not assert a 4311 claim. There was no evidence on summary judgment to rebut the school boards showing under 4316 that her termination was proper, that it was reasonably objective, and that she had had adequate prior notice that if her performance did not improve, she could be dismissed. Her dismissal for performance was entirely consistent with Virginia Code Section 22.1307, which allows for the dismissal of a teacher for incompetency, which is defined to mean failure to meet one or more performance evaluations. The last position matter I was going to talk about was the remedy standing thing, but I think I've already addressed that. I did want to point out that there was never any evidence presented on summary judgment to rebut the admissions plaintiff made throughout her disability benefits statements that her inability to work was tied to her military disability, her service-related disability versus her employment with Prince William. There was no expert identified to tie her lost wages and inability to work to her employment. And so we believe that in addition to the essential liability issues, that there was no showing sufficient to give the plaintiff standing to recover any damages under USERRA. We now know she was disabled at the time of that one. We now know she was disabled from her service-connected service. The evidence from all of her VA benefits was that she was disabled as of October 28, 2010 from any employment at all, by virtue of a series of different military service-related disabilities, including post-traumatic stress disorder, but various other conditions as well. Right. And she would have had that during this time when you were, she was going through her, these performance evaluations and those kind of things, right? She wasn't diagnosed, but she would have had it when she left, correct? She may have had some form of it. She may have had some symptoms. There were a lot of other stressors going on in her life, and they're in the record. She was having difficulty with her family. There was an arrest. There were other issues in her personal life that were impacting her mental condition, which could have caused or contributed to post-traumatic stress disorder diagnosis in August of 2010. So unless the Court has any other questions, I think I'm done. Thank you. Mr. Kaplan, you have some time reserved. Thank you, Your Honor. Just briefly, just a few points. The first point is, and I think Your Honor touched upon it, but under Francis and numerous other cases, I think it's important to recognize that this is a remedial statute, and Francis says very clearly that it needs to be interpreted in a way to carry out its purpose, which is to protect returning. Yes, I thought that was Congress' intent, and the case law clearly said it is remedial. That's what it's meant to be, remediation. Right. Which takes something more than, I guess, X's and O's. Right. Go ahead. On the Huff case, again, I would argue that it's similar to the Francis case, in that there's no doubt that once the person is in the proper reemployment position, 4313 no longer applies. But neither in Huff nor in Francis was the argument made that's made here, that this was not the right reemployment position, because my client was not qualified. And when was it you decided that was the argument you were going to make? Because I can't, your theory shifts quite a bit. I think the argument is, I mean, I take no issue with the fact this case was filed pro se, and the theory of recovery has changed over time. But I think in the complaint, and certainly in the argument that was presented to the district court on the motion for summary judgment, I think it's essentially the same. Other things were argued as well, but I think the argument that we are making here today was included in the argument on motion for summary judgment. The other point that I wanted to make is, you know, counsel talked about all these facts that indicate that my client may not have been disabled or that what was known about when she was disabled. The point simply is that there's a factual dispute, and whether she was able to do the duties of her job is something that in our view should ultimately be decided by a jury. That's all I, the points that I wanted to highlight, unless the court has anything. Would you respond to your colleague when the school system says that you can't have an independent remedy in terms of hostile work environment and those things that was normal? We cited a district court case in California, Montoya versus Orange County, which had a similar theory of recovery. The court concluded that essentially the hostile work environment in that case caused the sheriff deputy, who had been a former military member, to be unable to continue with his work. And the court found that the individual was entitled to wages he would have earned in the future, absent the conduct of the sheriff's department. And is that your theory here, then, that the alleged hostile work environment caused her inability to work, is that correct? Her complete inability to work was caused by the hostile work. So assuming that that is a valid claim to bring, how is it that you would prove that in your case in chief? What evidence do you have of that? The evidence in the record is that the cause of her inability to work was her PTSD. Resulting from her military service. So assuming there is a valid claim, it's your duty to prove it, so how? That's right, Your Honor. I think we would do that through the testimony of the complainant, through the testimony of the people who observed her, through the communication she had during that time period. I think there's sufficient evidence to have a jury make that decision. My understanding, and perhaps I'm wrong, is that the 4311 claim was abandoned. Is that not correct? That's absolutely correct. But it's the 4311 claim that would have touched on the hostile environment, isn't it? Well, no, the argument is that she was never properly reemployed. She never got into a, was placed into a proper reemployment position. Okay, I just thought we were talking about hostile work environment. Well, she was never placed into a proper reemployment position, and during that time period, when the school system was not complying with UCEDD, the school system's conduct caused her to deteriorate where she couldn't work. Thank you.
judges: Roger L. Gregory, Allyson K. Duncan, Stephanie D. Thacker